IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| VERONICA HINTON, | ) | |
| | ) | |
| Plaintiff, | ) | No. 1:24-cv-12017 |
| | ) | |
| v. | ) | Judge John J. Tharp, Jr. |
| | ) | |
| THE CITY OF CHICAGO; MATTHEW | ) | |
| O. BRYANT; JOHN DOE, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Is an undercover officer who hides his affiliation with law enforcement a state actor for purposes of 42 U.S.C. § 1983? "The answer is that lawyers' favorite: it depends." *US Bank NA ex rel. Registered Holders v. B R Penn Realty Owner LP*, 137 F.4th 104, 107 (3d Cir. 2025). More specifically, it depends on the nature of the acts at issue. Here, the Court concludes that an undercover officer's private acts—those acts serving private, rather than governmental, interests, and which are neither enabled nor protected by governmental authority—do not occur under color of state law.

Veronica Hinton sued the City of Chicago and two of its police officers, Matthew Bryant and John Doe,[1] alleging that the officers violated her rights while undercover. The challenged behavior—engaging in sexual contact with Hinton under false pretenses—no doubt crossed the line between appropriate and inappropriate interaction with a suspect. And the Court has no doubt

---

[1] John Doe is an unknown Chicago police officer. Hinton presumably intended to replace Officer Doe with his real-life counterpart via amendment. *See Herrera v. Cleveland*, 8 F.4th 493, 496-99 (7th Cir. 2021) (plaintiff can replace Doe defendant during limitations period, but replacement after limitations period does not relate back); *but see Aviles v. Village of Bedford Park*, 160 F.R.D. 565, 567 (N.D. Ill. 1995) (noting that Doe defendants should be identified and served within the relevant period for service).

that undercover officers *can* be state actors subject to liability under § 1983. *See, e.g.*, *Matje v. Leis*, 571 F. Supp. 918, 925 (S.D. Ohio 1983). But after a "rigorous fact-bound inquiry," the Court concludes that the "invocation of state authority" neither facilitated nor enabled the private acts at issue in this case. *DiDonato v. Panatera*, 24 F.4th 1156, 1160-61 (7th Cir. 2022).

For the reasons that follow, Hinton's claims against the City and its officers are dismissed without prejudice. If Hinton believes she can address the shortcomings identified in this opinion, she may file an amended complaint on or before August 8, 2025. Failure to timely and adequately amend will result in (1) dismissal of Hinton's § 1983 claims against Officer Bryant with prejudice, (2) dismissal of Hinton's *Monell* claims against the City with prejudice, and (3) entry of final judgment in favor of the defendants.

## I. BACKGROUND[2]

### A. Prostitution Stings

This case stems from two sting operations executed by the Chicago Police Department (CPD) in 2024. In the first, on August 11, 2024, Officer Bryant stopped his unmarked car next to Hinton, who was standing near a gas station at the intersection of 48th Street and Cicero Avenue. After lowering the driver's side window, Officer Bryant "proposed that [Hinton] engage in sexual acts with him in exchange for money." Compl. 2 ¶ 7, ECF No. 1. Officer Bryant "claimed that he was not affiliated with law enforcement," and Hinton "agreed to engage in sexual acts with [Officer] Bryant in exchange for money, on the condition that he was" telling the truth about not being a police officer. *Id.* ¶¶ 8-9.

---

[2] In reviewing the defendants' motions to dismiss, the Court "accept[s] as true all of the well-pleaded facts in the complaint and draw[s] all reasonable inferences in favor of the plaintiff." *Kubiak v. City of Chicago*, 810 F.3d 476, 480-81 (7th Cir. 2016).

After Hinton entered Officer Bryant's vehicle, Officer Bryant "once again claimed that he was not affiliated with law enforcement." *Id.* at 3 ¶ 12. Officer Bryant then touched intimate areas of Hinton's body "through her clothes," and Hinton did the same to Officer Bryant. *Id.* ¶ 13. According to Hinton, she would not have touched Officer Bryant had she known he was a police officer. *See id.* ¶ 14 (noting that Hinton touched Officer Bryant only because she believed he "was not affiliated with law enforcement"). Shortly after the touching began, additional CPD officers "arrived, arrested [Hinton], transported her to the police station, and charged her with prostitution" under Illinois law.[3] *Id.* ¶ 15.

The second sting, about two months later, resembled the first. On October 16, 2024, Officer Doe stopped his car next to Hinton, who was standing near a gas station at 49th and Cicero, just a block away from the location where Hinton's encounter with Officer Bryant had occurred. Officer Doe lowered the driver's side window and "proposed that [Hinton] engage in sexual acts with him in exchange for money." *Id.* ¶ 17. Like Officer Bryant, Officer Doe told Hinton that he "was not affiliated with law enforcement." *Id.* ¶ 18. Officer Doe then exposed his genitals and instructed Hinton to touch them; Hinton agreed to do so "in exchange for money," though her agreement was again "on the condition that [Officer Doe] was not affiliated with law enforcement." *Id.* ¶ 20.

"Believing that [Officer Doe] was not affiliated with law enforcement," Hinton proceeded to touch his genitals. *Id.* ¶ 21. She then entered Officer Doe's vehicle. After another assurance from Officer Doe that he "was not affiliated with law enforcement," Officer Doe again exposed his genitals, this time requesting that Hinton engage in oral contact. *Id.* at 4 ¶ 24. Hinton complied,

---

[3] *See generally* 720 Ill. Comp. Stat. 5/11-14(a) ("Any person who knowingly performs, offers or agrees to perform any . . . touching or fondling of the sex organs of one person by another person, for anything of value, for the purpose of sexual arousal or gratification commits an act of prostitution.").

still "[b]elieving that [Officer] Doe was not affiliated with law enforcement," and Officer Doe touched intimate areas of Hinton's chest "over her shirt." *Id.* ¶¶ 25-26. "Additional police officers [then] arrived" and cited Hinton for prostitution. *Id.* ¶ 27.

### B.    Procedural History

Hinton sued Officer Bryant, Officer Doe, and the City of Chicago in November 2024. Hinton's complaint identifies two theories of liability against the officers. In counts 1 through 3 (the § 1983 claims), Hinton asserts that Officers Bryant and Doe violated her Fourth and Fourteenth Amendment rights "by making abusive sexual contact" with her person.[4] Compl. 5-6 ¶¶ 34, 38, 43; *see* 42 U.S.C. § 1983. In count 7 (the battery claim), Hinton contends that by engaging in sexual contact with her, Officers Bryant and Doe committed battery in violation of Illinois law.

As to the City, Hinton's complaint also identifies two theories of liability. In counts 4 through 6 (the *Monell* claims), Hinton maintains that the City is liable for the officers' violations pursuant to 42 U.S.C. § 1983 and *Monell v. Department of Social Services*, 436 U.S. 658 (1978). And in count 7 (the battery claim, discussed above), Hinton alleges that the City is liable for the officers' state law violations under a theory of *respondeat superior*.

The City moved to dismiss the *Monell* claims,[5] and Officer Bryant moved to dismiss the § 1983 claims. Neither the City nor Officer Bryant moved to dismiss the battery claim; Officer

---

[4] Although count 2 indicates that the City is liable for the officers' actions (perhaps under a theory of *respondeat superior*), Hinton indicates that her attorney "made a scrivener's error when drafting the complaint," and that count 2 "is supposed to be against [the] Officers." Resp. 1 n.1, ECF No. 24.

[5] The City also moved to dismiss count 2, but given the scrivener's error described above, the Court need not engage with the City's arguments on that count. *See supra* note 4 and accompanying text.

Bryant answered as to that claim only, and the City requested "to stay its responsive pleading to [the claim] pending [a] ruling" on its motion to dismiss.[6] City MTD 1, ECF No. 15.

## II.    DISCUSSION[7]

### A.    Officer Doe

Before proceeding to the motions to dismiss, the Court addresses the claims asserted by Hinton against Officer Doe. Officer Doe has not answered or otherwise responded to those claims, nor has he entered an appearance in this case. But that is not surprising: Officer Doe is an unnamed (and apparently unidentified) CPD officer, and Hinton has neither ascertained his identity nor served him with process. *Supra* note 1; *see generally Aviles v. Village of Bedford Park*, 160 F.R.D. 565, 567 (N.D. Ill. 1995) (in situations "where the identity of alleged defendants will not be known prior to the filing of a complaint," it is "commonplace to allow the action to proceed against . . . unnamed defendants until the plaintiff can learn the defendants' [identities] through discovery" (quotation marks omitted)).

More than 90 days have passed since Hinton filed her complaint, so the Court has two options. First, it could preserve Hinton's claims against Officer Doe, ordering limited discovery as to Officer Doe's identity and directing Hinton to effect service "within a specified time."[8] Fed. R. Civ. P. 4(m); *see, e.g.*, *Aviles*, 160 F.R.D. at 568. Second, it could "dismiss the action without prejudice" against Officer Doe. Fed. R. Civ. P. 4(m); *see, e.g.*, *Cunliffe v. Wright*, 51 F. Supp. 3d 721, 730 (N.D. Ill. 2014).

---

[6] That request is granted: The City need not respond to the battery claim unless and until Hinton files an amended complaint plausibly stating a federal claim.

[7] The Court has jurisdiction over the § 1983 and *Monell* claims under 28 U.S.C. §§ 1331 and 1343, and over the battery claim under 28 U.S.C. § 1367.

[8] Presumably after the close of discovery and the filing of an amended complaint replacing Officer Doe with his real-life counterpart.

The Court takes the second path, largely for reasons of judicial efficiency. Hinton's claims against Officer Doe are nearly identical to her claims against Officer Bryant, and as discussed below, Hinton's claims against Officer Bryant cannot move forward as alleged. It would make little sense to (1) allow for discovery, (2) allow amendment to name Officer Doe, and (3) extend the service deadline, only to dismiss the claims against Officer Doe (now named) on a motion raising the same arguments raised by Officer Bryant.[9] For the same reason that the Court dismisses the § 1983 claims against Officer Bryant without prejudice, it dismisses Hinton's claims against Officer Doe without prejudice and with leave to amend.[10] If Hinton is able to allege new facts resolving the state-actor issue, the Court will consider (1) allowing limited discovery into Officer Doe's identity, (2) granting leave to amend to name Officer Doe, and (3) extending the relevant service deadline.

## B.      Motions to Dismiss

Dismissal under Rule 12(b)(6) is appropriate when "the allegations in [the] complaint, however true, [cannot] raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007); *see* Fed. R. Civ. P. 12(b)(6). Both the City and Officer Bryant argue that Hinton cannot "raise a claim of entitlement to relief" because, given the facts alleged, Officer Bryant was

---

[9] Of course, the filing of an amended complaint with additional facts could short-circuit this series of events. But the Court assumes, at least for purposes of the current discussion, that adequate amendment is not a certainty. In the event that Hinton cannot adequately amend, it would be odd to dismiss her claims against Officer Bryant while allowing identical claims against Officer Doe to (temporarily) proceed.

[10] While Rule 4(m) ordinarily requires "notice to the plaintiff" before dismissal without prejudice, Fed. R. Civ. P. 4(m), dismissal of a John Doe defendant "for [a] plaintiff's failure to timely identify the defendant and obtain service of process" is permissible "even without notice to [the] plaintiff," *Crawford v. Countrywide Home Loans, Inc.*, No. 09-cv-00247, 2010 WL 597942, at *6 (N.D. Ind. Feb. 12, 2010), *aff'd*, 647 F.3d 642 (7th Cir. 2011); *see Brengettcy v. Horton*, 423 F.3d 674, 683 (7th Cir. 2005); *see also, e.g., Johnson v. Trans Union, LLC*, No. 10-cv-06960, 2012 WL 983793, at *9 (N.D. Ill. Mar. 22, 2012), *aff'd*, 524 F. App'x 268 (7th Cir. 2013).

6

not a state actor when he (1) touched, and (2) was touched by Hinton. *Twombly*, 550 U.S. at 558. The Court agrees. And as the state-actor issue is dispositive, the Court begins and ends its main discussion there.

### 1.     Officer Bryant

"A plaintiff may hold a public official personally liable for misconduct under § 1983" only when the misconduct occurred "under color of state law." *DiDonato*, 24 F.4th at 1159 (quotation marks omitted). And misconduct occurs "under color of state law" only when it "involves a misuse of power[] possessed by virtue of state law and made possible . . . because the wrongdoer is clothed with the authority of state law." *Wilson v. Price*, 624 F.3d 389, 392 (7th Cir. 2010) (quotation marks omitted). "To plead that a defendant acted under color of state law," the Seventh Circuit has written, "a § 1983 plaintiff must allege that [the] defendant's invocation of state authority in one way or another facilitated or enabled" the complained-of behavior. *DiDonato*, 24 F.4th at 1161; *see id.* at 1160-61 (collecting relevant cases). Central to the Court's inquiry is "the nature of the specific acts" the defendant performed; whether the defendant was "actively assigned at the moment to the performance of his official duties" is not dispositive. *See id*. at 1160 (quotation marks omitted).

A defendant can invoke state authority by purporting to act under color of law. *Lopez v. Vanderwater*, 620 F.2d 1229, 1236 (7th Cir. 1980) ("Action taken by a state official . . . who purports to be acting under color of official right is state action and is taken under color of state law . . . ."). When such an *explicit* invocation leads to abuse of state power—particularly when context shows that the defendant is, in fact, a state official—the state-action question is typically straightforward. *Compare Pickrel v. City of Springfield*, 45 F.3d 1115, 1118 (7th Cir. 1995) (off-duty police officer who drove a marked police car and wore his uniform, gun, and badge when

7

arresting the plaintiff could be a state actor; uniform and badge were "signs of state authority," gun enabled him "to enforce his authority," and car advertised "the presence of a police officer"), *with Latuszkin v. City of Chicago*, 250 F.3d 502, 506 (7th Cir. 2001) (no state action where off-duty police officer neither "displayed any police power" nor "possessed any indicia of his office" at the time of the relevant conduct).

The assessment is more difficult, however, when a plaintiff claims that a defendant invoked state authority *implicitly*. A police officer without a badge or uniform can still be a state actor if he abuses the power of his office—*i.e.*, power possessed "by virtue of state law"—and the relevant abuse is "made possible only because" of that power.[11] *Wilson*, 624 F.3d at 392 (quotation marks omitted); *see DiDonato*, 24 F.4th at 1159-60 ("[I]t is firmly established that a § 1983 defendant acts under color of state law when he abuses the position given to him by the State." (quotation marks omitted)). If the officer's status as an officer "clothe[s] him with greater authority" to engage in the challenged conduct "than any other citizen would possess," *see Hughes v. Meyer*, 880 F.2d 967, 972 (7th Cir. 1989), it might not matter whether the officer overtly displays "police power . . . [or] indicia" of his position, *see Latuszkin*, 250 F.3d at 506.[12] Again, in determining whether an officer is acting under color of state law, the most "important consideration . . . is the nature of the specific acts performed." *Id*. at 505-06.

Officer Bryant and the City maintain that Officer Bryant did not invoke his authority as a police officer—expressly or implicitly—during his sexual encounter with Hinton. When Officer

---

[11] Indeed, even private individuals can act under color of state law when they exercise "powers traditionally exclusively reserved to the State." *See, e.g.*, *Scott v. Univ. of Chi. Med. Ctr.*, 107 F.4th 752, 760-61 (7th Cir. 2024) (quotation marks omitted).

[12] *Cf. Barnes v. City of Centralia*, 943 F.3d 826, 831 (7th Cir. 2019) (no state action where defendant officer reported a crime in his personal capacity; police officers, "like all other citizens, may invoke the state's protection"); *Hughes*, 880 F.2d at 972 (similar, as challenged conduct was "functionally equivalent to that of any private citizen").

Bryant initiated the encounter, they say, he did not purport to act as a state official, nor did he indicate that he was a police officer. In fact, he twice *disclaimed* any affiliation with law enforcement, making his conduct prior to Hinton's arrest "indistinguishable from that of any private citizen." Bryant MTD 3, ECF No. 16; *see* City MTD 5 (same). Regardless of whether Officer Bryant's actions were appropriate, the moving defendants argue, they did not involve "a misuse of power, possessed by virtue of state law and made possible . . . because [Officer Bryant was] clothed with the authority of state law." *Wilson*, 624 F.3d at 392 (quotation marks omitted).

Hinton acknowledges that Officer Bryant said he was not a police officer (and thus did not expressly purport to act under color of law). But Officer Bryant abused his official investigative authority to facilitate a sexual encounter, she argues, and the challenged conduct was only possible because of his law-enforcement status. An ordinary citizen in Officer Bryant's shoes, Hinton suggests, "would have been subject to arrest and prosecution for [his] conduct." Resp. 5, ECF No. 24; *see, e.g.*, 720 Ill. Comp. Stat. 5/11-14.1(a) (criminalizing solicitation). But Officer Bryant's state power immunized him from such consequences, effectively "cloth[ing] him with greater authority" to touch Hinton than an ordinary citizen would possess. *Hughes*, 880 F.2d at 972. In Hinton's view, Officer Bryant's implicit invocation of state authority therefore "facilitated or enabled" the challenged misconduct. *DiDonato*, 24 F.4th at 1161.

Hinton's argument, at least given the facts alleged here, misses the mark. That is because "the specific acts" of which Hinton complains had nothing to do with Officer Bryant's status as a police officer. *Id.* at 1160 (quotation marks omitted). True, before Officer Bryant engaged in "abusive sexual contact" with Hinton, he was investigating prostitution. Compl. 5-6 ¶¶ 34, 38, 43. And true, Officer Bryant's power to conduct that investigation (*i.e.*, to solicit Hinton without subjecting himself to criminal penalties) was likely "possessed by virtue of state law." *Wilson*, 624

9

F.3d at 392 (quotation marks omitted). But Hinton's claim is not that Officer Bryant violated her rights by soliciting her to engage in prostitution; her claim is that, after determining that Hinton had engaged in prostitution, Officer Bryant touched her inappropriately. *See* Compl. 4 ¶ 28 (defining "abusive sexual conduct" as "sexual conduct with women . . . *after* the offense [of prostitution] has already occurred" (emphasis added)). Looking at the record, the Court cannot plausibly infer that the law protected Officer Bryant's touching in the same way it (likely) protected his solicitation.

As far as the Court can tell, the CPD did not arrest or otherwise discipline Officer Bryant for making sexual contact with Hinton. But it does not follow that the alleged abuse was "made possible only because" of state law. *Wilson*, 624 F.3d at 392 (quotation marks omitted). The government has no monopoly on sexual touching, and anyone—including a private individual—could have engaged in the conduct at issue in the manner described.[13] Perhaps, had Hinton plausibly alleged a CPD policy encouraging undercover officers to engage in sexual activity with prostitution-sting targets, the Court could infer that Officer Bryant was empowered—in a way that a private individual would not be—to engage in sexual contact with Hinton. But Hinton has not so alleged, *see infra* section II.B.2 (reaching this conclusion for Hinton's *Monell* claims), and Officer Bryant's behavior is more appropriately characterized as "self-serving opportunism" than "an exercise of state authority." *See DiDonato*, 24 F.4th at 1162.

---

[13] Hinton does not identify any Illinois statute criminalizing Officer Bryant's post-solicitation conduct, nor does she argue that an ordinary citizen in Officer Bryant's shoes would be subject to arrest for touching alone (as he might be for, say, solicitation). Officer Bryant did not himself commit prostitution, as he was the one offering something of value, not the one receiving something of value. *Compare* 720 Ill. Comp. Stat. 5/11-14.1(a) (offering something of value in exchange for a sexual act is solicitation), *with id.* 5/11-14(a) (performing or agreeing to perform a sexual act in exchange for something of value is prostitution).

To be sure, Officer Bryant took advantage of an opportunity that arose from his undercover investigation, and his investigative authority may have put him in a spot where he could sexually exploit Hinton. But the "specific acts" at issue here—that is, the acts on which the color-of-law determination turns—were not part of the prostitution investigation itself. *Latuszkin*, 250 F.3d at 506. By the time Officer Bryant touched Hinton, she had already "agree[d] to perform . . . [sexual acts] for [something] of value," and the offense of prostitution was technically complete. 720 Ill. Comp. Stat. 5/11-14(a). Although Hinton's touching of Officer Bryant could have bolstered a potential prostitution case against Hinton, *see id.* (criminalizing the "touching or fondling of the sex organs" in exchange for money), it bears repeating that the complained-of conduct is Officer Bryant's touching of Hinton, not Hinton's touching of Officer Bryant, *see* Compl. 5-6 ¶¶ 34, 38, 43 (challenging only "abusive sexual contact" by the defendant officers).[14] Groping Hinton did nothing to advance Officer Bryant's investigation of *Hinton's* criminal conduct; it served only Officer Bryant's interest, not the City's.

In short, Officer Bryant did nothing that a private citizen could not have done. At least as alleged, then, no "invocation of state authority . . . facilitated or enabled" Officer Bryant's behavior. *DiDonato*, 24 F.4th at 1161. This "does not mean that what [Officer Bryant] did was [right]," but simply "that what he did is not actionable under § 1983." *Luce v. Town of Campbell*, 116 F. Supp. 3d 915, 917 (W.D. Wis. 2015), *aff'd*, 872 F.3d 512 (7th Cir. 2017); *cf., e.g., id.* (no state action when sheriff engaged in typically private behavior and actively hid his identity); *Pickard v. City of Girard*, 70 F. Supp. 2d 802, 806 (N.D. Ohio 1999) (no state action where defendant "did not identify himself as a police officer or direct the Plaintiffs by exerting his

---

[14] On that point, a brief observation. Had Officer Bryant not touched Hinton (and simply let Hinton touch him after the agreement), it is hard to imagine what constitutional claims Hinton could have brought against Officer Bryant.

authority as a police officer"); *Manning v. Jones*, 696 F. Supp. 1231, 1234-35 (S.D. Ind. 1988) (no

state action where undercover officers "acted as private citizens, never invoking the power of their

state office nor their police persona").

The Court does not mean to imply that an undercover officer can *never* be a state actor. *Cf.*

Reply 2, ECF No. 27 ("[T]he City is not arguing that sting operations, in general, are always

conducted outside the color of law. Rather, the City's argument is that these officers did not

exercise or even invoke state authority during the relevant conduct . . . ."). As noted, an express

(or otherwise well-established) policy allowing conduct like Officer Bryant's could render the

conduct here state action. Similarly, this case might look different if Officer Bryant made illicit

contact with Hinton (or purported to detain her without probable cause, or violated her rights in

another way) while determining whether she intended to exchange sex for money. *See, e.g.*, *Matje*,

571 F. Supp. at 925 ("Clearly, an undercover agent acts under color of state law . . . when he

conducts his investigations."). As it stands, however, Officer Bryant touched Hinton "as a private

citizen," not as an investigating official. *Barnes v. City of Centralia*, 943 F.3d 826, 831 (7th Cir.

2019); *see also DiDonato*, 24 F.4th at 1160 (explaining the fact-specific nature of the state-action

inquiry). Put differently, Officer Bryant's police badge "did not clothe him with greater authority

[to engage in sexual activity with Hinton] than any other citizen would possess." *Hughes*, 880 F.2d

at 972.

\*     \*     \*

"Section 1983 does not cover disputes between private citizens, even if one happens to be

an officer." *Barnes*, 943 F.3d at 831 (quotation marks omitted). Because the complaint alleges

only private misconduct, Hinton's § 1983 claims against Officer Bryant are dismissed.[15] That

dismissal is without prejudice, as Hinton could allege additional facts showing that state law

empowered Officer Bryant to touch her inappropriately. *See, e.g.*, *Pintaro v. Granada*, No. 23-cv-

02008, 2025 WL 580862, at *3 (N.D. Ill. Feb. 21, 2025) (plaintiffs should generally be given at

least one opportunity to amend). For now, though, § 1983, does not appear to "provide[] the

appropriate remedy" in this case. *Luce*, 872 F.3d at 515.

### 2. The City

Having dismissed the § 1983 claims against Officer Bryant, the resolution of Hinton's

*Monell* claims is straightforward. As the Seventh Circuit recently noted:

> [T]he requirement that the plaintiff must initially prove that he was deprived of a
> federal right [is settled and familiar]. That's the first step in every § 1983 claim,
> including a claim against a municipality under *Monell*. A *Monell* plaintiff must
> establish that he suffered a deprivation of a federal right before [other relevant
> *Monell* considerations] come into play.

*First Midwest Bank ex rel. Est. of LaPorta v. City of Chicago*, 988 F.3d 978, 987 (7th Cir. 2021)

(emphasis omitted). A plaintiff cannot prevail on a *Monell* claim without first establishing a

constitutional violation, in other words, and Hinton has not established such a violation because

she has not established that Officer Bryant's misconduct occurred under color of state law.[16] *See*

*id.* (*Monell* claim based solely on "an act of private violence" could not succeed); *see also, e.g.*,

*Matthews v. City of East St. Louis*, 675 F.3d 703, 709 (7th Cir. 2012) ("Here, there was no

---

[15] In view of this dismissal, Court need not consider Officer Bryant's argument that Hinton's due-process and Forth Amendment claims are duplicative.

[16] Because the Court has already dismissed Hinton's claims against Officer Doe, it focuses on Hinton's § 1983 claims against Officer Bryant when evaluating the City's motion to dismiss. The Court notes, however, that given the similarity between Officer Bryant's and Officer Doe's conduct, amendment could cure the state-action issue (as relevant to the § 1983 and *Monell* claims) for both men. *Cf. supra* section II.A (the Court will consider allowing discovery for Officer Doe if Hinton is able to allege new facts regarding CPD policy).

constitutional violation, therefore no municipal liability."). Her *Monell* claims therefore fail, although the Court dismisses those claims without prejudice because amendment could address the state-action issue identified above. *See supra* section II.B.1 (had Hinton plausibly alleged a CPD policy authorizing officers to sexually exploit those in her position, the state-action inquiry might look different).

Given the Court's dismissal of the *Monell* claims at the "first step" of the inquiry (state action), the Court need not consider whether Hinton has satisfied the other pleading requirements for *Monell* liability. *LaPorta*, 988 F.3d at 987.[17] Nonetheless, the Court makes two observations on the subject. First, in her response, Hinton argues that she has "sufficiently pleaded a *Monell* claim under the custom or practice theory." Resp. 5; *see LaPorta*, 988 F.3d at 986 (a municipality can be liable under § 1983 when the constitutional violation was caused by behavior "so permanent and well-settled that it constitutes a custom or practice" (quotation marks omitted)). That is so, Hinton says, because she has "identified not one but two instances with two different undercover police officers who worked for the [CPD] that conducted sting operations and made abusive sexual contact with her." Resp. 6.

Although it is disturbing that two separate officers subjected Hinton to the same inappropriate conduct, the Court doubts that two instances, standing alone, are sufficient to plausibly allege "a widespread practice that is . . . permanent and well-settled." *LaPorta*, 988 F.3d at 986 (quotation marks omitted). Of course, a plaintiff "may rely solely on [her] own experience"

---

[17] *See generally Thomas v. Neenah Joint Sch. Dist.*, 74 F.4th 521, 524 (7th Cir. 2023) ("For a *Monell* claim to survive a motion to dismiss, a plaintiff must plead facts . . . plausibly suggest[ing] that: (1) she was deprived of a constitutional right; (2) the deprivation can be traced to some municipal action (i.e., a policy or custom), such that the challenged conduct is properly attributable to the municipality itself; (3) the policy or custom demonstrates municipal fault, i.e., deliberate indifference; and (4) the municipal action was the moving force behind the federal-rights violation." (quotation marks omitted)).

in order to state a *Monell* claim. *Garcia v. City of Chicago*, No. 17-cv-03932, 2018 WL 3546742, at *2 (N.D. Ill. July 24, 2018); *see, e.g.*, *White v. City of Chicago*, 829 F.3d 837, 844 (7th Cir. 2016) (individual experience, together with "standard printed form that does not require specific factual support for an application for an arrest warrant," sufficient to allege widespread practice). And alleging two instances of misconduct is more probative of custom or practice than alleging only one such instance. *Cf., e.g.*, *Hutton v. City of Chicago*, No. 20-cv-03997, 2021 WL 809731, at *4 (N.D. Ill. Mar. 3, 2021) ("No bright line exists as to how many violations it takes to make out a *Monell* claim, but . . . generally one instance is not enough." (quotation marks omitted)). But the Seventh Circuit has found *three* instances of misconduct insufficient to plausibly allege a "widespread custom or practice," *see Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010) (quotation marks omitted), and Hinton "presents no additional context surrounding her experience that permits a reasonable inference that the [relevant] conduct was pursuant to a widespread policy," *Washington v. City of Chicago*, No. 24-cv-12842, 2025 WL 1262569, at *3 (N.D. Ill. May 1, 2025). Because nothing nudges Hinton's custom-or-practice allegations "across the line from conceivable to plausible," *Twombly*, 550 U.S. at 570, the Court would dismiss her *Monell* claims even if Officer Bryant had acted under color of state law.[18]

Second, the Court agrees with the City that Hinton's allegations regarding deliberate indifference and moving force (prongs 3 and 4 of the *Monell* inquiry) are at best conclusory. *See*

---

[18] The § 1983 and *Monell* claims are linked in this way: Hinton's failure to adequately allege a widespread CPD policy is fatal to her claims against Officer Bryant (no state action) and against the City (no constitutional deprivation, no custom or practice). Hinton states in her response that "discovery will reveal . . . [the City's] widespread but unwritten custom or practice of permitting undercover officers . . . to engage in abusive sexual contact without legal justification." Resp. 6. As the City correctly notes, however, Hinton "is required . . . to plead factual content that plausibly supports the existence of a widespread practice ***before*** discovery." Reply 4 (emphasis added). Mere "speculation that discovery may reveal something down the line" does not suffice. *Id.*

*supra* note 17; *compare Myatt v. City of Chicago*, No. 90-cv-03991, 1991 WL 94036, at *8 (N.D. Ill. May 23, 1991) (deliberate-indifference requirement is met when the plaintiff shows that (1) "the City's actions were inadequate," (2) "those inadequacies were likely to result in the violation of constitutional rights," (3) "it was obvious that additional or different actions were needed," and (4) "no additional or different actions were taken"), *with* Compl. 7-8 ¶¶ 49, 56, 62 (alleging only that the City's fault "constitutes deliberate indifference"); *Anderson v. Allen*, No. 19-cv-02311, 2020 WL 5891406, at *3 (N.D. Ill. Oct. 5, 2020) ("A moving force must be pleaded with enough facts to allow the court to infer a direct causal link between the municipal action and the . . . constitutional injury." (quotation marks omitted)), *with* Compl. 7-9 ¶¶ 48, 54, 61 (alleging only that the City's custom or practice "was the direct cause of Plaintiff's injuries"). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not sufficient to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Accordingly, the Court would dismiss Hinton's *Monell* claims even if she had plausibly alleged (1) state action, and (2) a widespread custom or practice.[19]

### C.    The Battery Claim

To recap, the Court has dismissed (1) all of Hinton's claims against Officer Doe without prejudice, (2) Hinton's § 1983 claims against Officer Bryant without prejudice, and (3) Hinton's *Monell* claims against the City without prejudice. That leaves just one claim for the Court to consider: the battery claim against Officer Bryant and the City. Neither the City nor Officer Bryant has moved to dismiss Hinton's allegations of battery (and *respondent superior* liability under state

---

[19] Hinton again asserts she has "pleaded enough facts for the Court to reasonably expect that discovery will reveal that . . . [the] City was deliberately indifferent and the widespread custom or practice was the moving force behind [her] injury." Resp. 7. But as the City points out, a "statement that discovery will reveal more is no substitute for well-pleaded facts." Reply 6 (quotation marks omitted).

law). *See supra* section I.B. But the Court, having "dismissed all claims over which it [had] original jurisdiction," declines to exercise its supplemental jurisdiction over those allegations and the underlying claim. 28 U.S.C. § 1367(c)(3). Hinton's state law battery claim, too, is dismissed without prejudice.

## III.   CONCLUSION

For the foregoing reasons, the City's motion to dismiss and Officer Bryant's partial motion to dismiss are granted, and Hinton's claims against all three defendants are dismissed without prejudice. Hinton is given leave to file an amended complaint by August 8, 2025. If Hinton chooses to stand on her initial complaint, or if the amended complaint fails to address the issues described above, the Court will (1) convert its dismissal of the § 1983 claims against Officer Bryant into one with prejudice, (2) do the same for Hinton's *Monell* claims against the City, and (3) enter final judgment in favor of Officer Bryant, Officer Doe, and the City.[20]

Date: July 14, 2025

John J. Tharp, Jr.
United States District Judge

---

[20] This scenario would allow Hinton to reassert her battery claim against all three defendants in state court. Hinton could also reassert her § 1983 claims against Officer Doe, but given the state-action discussion above, it is unlikely those claims would survive a motion to dismiss.